IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | |
|---|---|
| JESSIE JONES, III | § |
| VS. | §   CIVIL ACTION NO. 1:02cv673 |
| DIRECTOR, TDCJ-CID | § |

<u>MEMORANDUM OPINION</u>

Petitioner Jessie, Jones, III, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, through counsel, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

<u>Factual Background</u>

In 1999, following a jury trial, petitioner was convicted of attempted capital murder in the Criminal District Court of Jefferson County, Texas. *State of Texas v. Jessie Jones, III*, cause number 76566. He was sentenced to 75 years confinement. On February 28, 2010, the conviction was affirmed by the Court of Appeals for the Ninth District of Texas. *Jones v. State*, 37 S.W.2d 552 (Tex.App.-Beaumont 2001). Petitioner did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

On August 16, 2001, petitioner filed a state application for writ of habeas corpus. The Court of Criminal Appeals denied the application on the findings of the trial court without a hearing. *Ex parte Jones*, Appl. No. 51, 554-01 (Feb. 20, 2002). A second application was filed on October 7, 2002. This application was dismissed as an abuse of the writ on November 16, 2002. *Ex parte Jones*, Appl. No. 51, 554-02.

<u>Grounds for Review</u>

Petitioner asserted the following grounds for review: (a) he received ineffective assistance of counsel because counsel: (1) failed to advise him of his right to have the jury assess punishment; (2) failed to object to the admission of hearsay evidence; (3) failed to effectively exercise petitioner's right to confront witnesses; (4) introduced inadmissible hearsay and (5) made other unprofessional error; (b) the complaint which formed the basis of the prosecution was not sworn to before the information was presented and (c) the prosecution failed to disclose exculpatory evidence.

This court dismissed two of petitioner's claims of ineffective assistance of counsel, that counsel failed to advise him of his right to have the jury assess punishment and failed to exercise his right to confront witnesses, as procedurally barred. The dismissal of the ground for review relating to having the jury assess punishment was based on the court's conclusion that as this ground for review was raised in a supplement to his first state application, and as the trial court recommended that the ground for review be dismissed as successive, the Court of Criminal Appeals, in adopting the findings of the trial court, relied on a state procedural ground to dismiss this ground for review. The remaining grounds for review were denied on the merits.

On appeal, the United States Court of Appeals for the Fifth Circuit disagreed with this court's treatment of the ground for review relating to the jury assessing punishment. The Fifth

2

Circuit held that as the Court of Criminal Appeals "denied" the first state application, rather then dismissing a portion of it, it did not explicitly rely on a state procedural rule and denied all grounds for review on the merits. Accordingly, the Fifth Circuit remanded this ground for review for further consideration.

<u>Evidence at Trial</u>

In its opinion, the intermediate appellate court described the evidence introduced at trial as follows:

> The indictment alleged that Jones, with the specific intent to commit capital murder, did intentionally attempt to cause the death of Arthur Woods by cutting and stabbing Woods with a deadly weapon, a knife, while in the course of committing or attempting to commit robbery. Woods testified that he was personally acquainted with Allan Joseph Coleman, whom Woods knew as "Pete." Coleman is Jones' brother-in-law. Woods had never met Jones before the day of the offense, when Jones and Coleman entered Woods's home on the pretense of buying a $5.00 bottle of gin and using the restroom. Coleman pointed a .380 at Woods's head and screamed, "Bitch, it's time to break bread," a phrase meaning that Woods must either give up his money or be killed. Jones rushed forward and started punching Woods in the face. Woods directed his assailants to $750 in cash hidden under the kitchen sink. Woods was knocked to the floor and hog-tied with an extension cord. Jones and Coleman went through Woods's pockets, removing a pocket knife and a gun. While Coleman searched for more money, Jones took Woods's pocket knife and repeatedly stabbed Woods in the back of the neck. Coleman stated that they would have to kill Woods. Someone kicked Woods; then Coleman sprayed mace in his eyes. Coleman got gasoline and kerosene from under the sink, poured it over Woods and stated, "Let's set him on fire." Jones went to one of the kitchen drawers, took out a steak knife and stated, "I'll bet this is really going to hurt." Woods begged Jones not to cut him any more. Jones sliced Woods on the upper leg, hit him a few times on the back with the knife, cut him twice on the back of the neck, then tried to hold Woods's head up in order to cut Wood's throat. Jones took boiling water from the microwave oven and slowly poured it over Woods. Jones went into another

room and ransacked the house. Coleman stated, "Jessie, Jessie, we got to kill him. Jessie, we got to kill him." Jones stabbed Woods again. Then Coleman stated, "Art, see ya," and using Woods's .22 caliber revolver, shot Woods at point blank range in the upper side, the back, and the side of the head. Approximately 45 minutes had elapsed. Woods survived to repeatedly provide in-court identification of the defendants.

## Statute of Limitations

Title 28 U.S.C. § 2244(d) imposes a one year statute of limitations on federal petitions seeking a writ of habeas corpus brought by state prisoners. The statute of limitations begins to run from the latest of the four following dates: (1) the date the judgment became final; (2) the date an impediment to filing created by unconstitutional state action was removed; (3) the date the United States Supreme Court first recognized the constitutional right if the right applies retroactively to cases on collateral review; or (4) the date the factual predicate of the claim could have been discovered by due diligence. The statute also provides that the limitations period is tolled during the time state post-conviction or other collateral attack is pending.

Petitioner's conviction was affirmed by the intermediate appellate court on February 28, 2002. As no petition for discretionary review was filed with the Texas Court of Criminal Appeals, petitioner's conviction became final on March 30, 2001, thirty days later, when the time period for filing a petition for discretionary review expired. The period of limitations therefore began to run on March 31, 2001, and would have expired on March 30, 2002.

However, as stated above, on August 16, 2001, petitioner filed a state application for writ of habeas corpus that remained pending until February 20, 2002. Pursuant to 28 U.S.C. § 2244(d)(2), the period of limitations was tolled between such dates. Accordingly, the period of limitations was extended for an additional 189 days, or until October 5, 2002. October 5, 2002, fell on a Saturday. Pursuant to Federal Rule of Civil Procedure 6(a), the final day for filing the petition was therefore extended until October 7, 2002, the following Monday, and the date on which this petition was filed.

As the immediately preceding paragraph indicates, this petition appears to have been filed prior to the expiration of the applicable period of limitations. However, the respondent notes that after the petition was filed, petitioner filed a motion asking the court to stay this matter so that the Court of Criminal Appeals could consider and rule on a second state application raising the ground for review relating to having the jury assess punishment.[1] On October 25, 2002, the United States Magistrate Judge to whom this petition was referred submitted a Report and Recommendation of United States Magistrate Judge recommending that proceedings in this matter be stayed until the Court of Criminal Appeals issued a ruling. On November 19, 2002, the court adopted the report and stayed further proceedings in this matter. Counsel for petitioner was directed to notify the court within 30 days of the date on

---

[1] Petitioner filed his second state application on October 7, 2002, the same date on which this federal petition was filed.

which the Court of Criminal Appeals issued its ruling. Although the court was not aware of this, the Court of Criminal Appeals dismissed the second state application on November 6, 2002. On January 27, 2003, petitioner notified the court that the Court of Criminal Appeals had issued its decision.[2] The court entered an order lifting the stay on February 10, 2003.

Based on the foregoing, the respondent advances two theories as to why this petition is barred by the applicable statute of limitations. First, the respondent asserts that the tolling of the running of the limitations period caused by the filing of the second state application ended on November 6, 2002, the date the application was dismissed. As petitioner did not notify the court until January 27, 2003, that the second state application had been dismissed, and as this petition was filed on the last day of the limitations period, the limitations period expired before the notification was filed. Alternatively, the respondent states that even if it is assumed the limitations period was tolled until December 19, 2002, 30 days after the court entered its stay order, the limitations period began to run on that date. As petitioner did not notify the court that the stay had been lifted until approximately 38 days after this date, and as this petition was filed on the last day of the limitations period, the period of limitations had expired before the notification was filed.

---

[2] Counsel states he never received notice the second state application had been dismissed and only learned of the dismissal through telephoning the Court of Criminal Appeals on January 22, 2003.

These contentions are without merit. The Fifth Circuit concluded that the Court of Criminal Appeals denied the ground for review relating to having the jury assess punishment when it denied petitioner's first state application. As a result, this ground of review was fully exhausted when the current petition was filed. As matters turned out, the filing of the second state application was an unnecessary attempt to exhaust this ground for review before the state courts.

The ground for review relating to the jury assessing punishment was fully exhausted when the current petition was filed. As the current petition was filed within the applicable period of limitations, the petition could not thereafter become untimely because an unnecessary second state application was filed, even if petitioner failed to timely notify the court the application had been dismissed. This petition is therefore not barred by the applicable statute of limitations.

### The Merits of the Remaining Ground for Review

*Standard of Review*

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. In addition, this court must accept as correct any factual determination made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Ineffective Assistance of Counsel*

A. <u>Legal Standard</u>

A claim of ineffective assistance of counsel is reviewed under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, a defendant must demonstrate that 'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992) (quoting *Strickland*, 466 U.S. at 688). Merely alleging that counsel's performance was deficient is not enough. To be entitled

to relief, a petitioner must show that counsel's peformance fell beyond the bounds of prevailing, objective, professional standards. *Strickland*, 466 U.S. at 688.  There is a strong presumption that counsel provided adequate assistance and that the challenged conduct was the product of a reasoned strategy.  *Id*. at 689.

Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  A claim of ineffective assistance of counsel will only merit habeas relief when a petitioner satisfies both prongs of the *Strickland* test.  *See Strickland*, 466 U.S. at 687-97.

B.  <u>Application</u>

In connection with petitioner's first state application for writ of habeas corpus, trial counsel submitted an affidavit providing, in part, as follows:

> Prior to the commencement of trial I notified the Court of Mr. Jones' decision to change his punishment election and have the judge rather than the jury assess punishment.
>
> Mr. Jones' change of election was based solely on my misinterpretation of the law regarding the court's ability to assess probation.  Ultimately, the change of punishment election rendered Mr. Jones ineligible for probation consideration as the Court could not legally impose such a sentence.
>
> The change of punishment election was not strategy, it was an ill-advised decision based on my misinterpretation of the law.  Mr. Jones maintained hope that he would be considered for probation in the event the jury returned a verdict of guilty.  Before his change of punishment election, I improperly advised Mr. Jones that the Judge

9

> was his only chance for probation in the event of a guilty
> verdict. I believe that if he were properly advised,
> Mr. Jones would not have changed his punishment election.

Petitioner's offense included the finding that a deadly weapon was involved. Pursuant to Article 42.12, Section 4, of the Texas Code of Criminal Procedure, a jury may recommend that a defendant be placed on community supervision even if the offense of conviction involved a deadly weapon finding. However, a judge may not do so. As a result, counsel's understanding of whether a judge or jury could sentence a defendant to community supervision was backwards.

However, in the situation before the court, neither the jury nor the judge could have placed petitioner on community supervision. Under Texas law, neither the judge nor the jury can place a defendant on community supervision if he has a prior conviction for a felony. Petitioner had previously been placed on deferred adjudication probation based on a charge of unauthorized use of a motor vehicle. Prior to trial, the state had filed a motion seeking to have probation revoked and guilt adjudicated because petitioner violated the terms of his probation by attempting capital murder. After the jury's verdict was read, the prosecutor made a motion to have petitioner's deferred adjudication probation revoked. Petitioner entered a plea of not true. Before the court sentenced petitioner on the attempted capital murder charge, petitioner was found guilty of the unauthorized use of a motor vehicle charge. As a result, when petitioner was sentenced by the judge, he was ineligible for placement on community

supervision. It is clear that if petitioner had elected to have the jury assess punishment, petitioner would still have been found guilty of unauthorized use of a motor vehicle prior to the jury's assessment of punishment. As a result, the jury would have been unable to place petitioner on community supervision.

Based on the foregoing, while petitioner's counsel was wrong to believe the court could place petitioner on community supervision, he was not wrong to believe the jury could not place him on the community supervision. As a result, the question as to whether counsel's performance was deficient is a close one.

However, the court need not determine whether counsel's performance was deficient because petitioner has not demonstrated he suffered prejudice as a result of counsel's performance. In order to show *Strickland* prejudice in the context of sentencing, a petitioner must establish a reasonable probability that, but for trial counsel's errors, his sentence would have been significantly less harsh. *Miller v. Dtreke*, 420 F.3d 356 (5th Cir. 2005) (citing *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)).[3] When determining whether a sentence would have been significantly harsher, but for counsel's error, courts are instructed to

---

[3] In *United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2005), the United States Court of Appeals for the Fifth Circuit, relying on the Supreme Court's decision in *Glover v. United States*, 531 U.S. 198, 203 (2001), abrogated the "significantly less harsh" test for ineffective assistance of counsel claims arising under the federal sentencing guidelines. However, the court noted an important distinction between the federal sentencing guidelines and state sentencing regimes. As state sentencing tends to be more discretionary than the more predictable federal system, "practically any error committed by counsel could [result] in a harsher sentence." *Gammas*, 376 F.3d at 438 n.4 (quoting *Spriggs*, 993 F.2d at 88). As a result, the court limited its application of the *Glover* decision to cases involving the federal guidelines. *Id.*

consider:

> the actual amount of the sentence imposed on the defendant by the sentencing judge or jury; the minimum and maximum sentence possible under the relevant statute or sentencing guidelines, the relative placement of the sentence actually imposed within that range, and the various relevant mitigating and aggravating factors that were actually considered by the sentencer.

*Spriggs*, 993 F.2d at 88-89.

In this case, the judge sentenced petitioner to 75 years imprisonment. This was at the high range of the 5 years to 99 years imprisonment range applicable to petitioner's offense. Mitigating factors in the case included petitioner's age and his supportive family, as well as, possibly, the fact that his co-defendant was sentenced to 30 years imprisonment after pleading guilty. The fact petitioner had a prior conviction would be considered an aggravating factor. The fact that it was for a nonviolent offense could be considered a mitigating factor.

The main aggravating factor in this case was the heinous nature of the conduct which resulted in petitioner's conviction. The trial testimony has been summarized above and reflects that the victim was tortured over an extended period of time in order to obtain money. In addition, the judge made the following statement during the sentencing hearing:

> But the crime itself-and I recall the testimony as your attorney was speaking-just brings back unspeakable horrors that was visited upon the victim in this case.
>
> To assault a person, to tie him up, to assault him some more, and then stab him and to get a bigger knife to stab him some more-as I recall, the testimony was that when the bigger knife was retrieved, the statements made were: "This is going to hurt you more."

> And yes, as your attorney said, the co-defendant then told him to go ahead and kill him, that you attempted to do so but failed.  I cannot give a person credit for attempting to do something and not doing it when it was obvious that that was their intent.
>
> But after stabbing the person to spray mace in their face and then to get charcoal lighter fluid and some other type of combustible fluid and pour over that person with an attempt to put that person on fire and then when all that failed to sit there and shoot the person two or three times,[4] that is unimaginable to me that a human being would treat another human being in that fashion.

As stated above, the Court of Criminal Appeals denied this ground for review on the merits.  As a result, the question on federal habeas review in not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable–a substantially higher standard.'" *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).

In this case, the mitigating factors were relatively minor. In contrast, the conduct engaged in by petitioner was a significant aggravating factor.  As a result, while a jury might have imposed a shorter sentence, there is not a reasonable probability petitioner would have received a significantly less harsh sentence if he had been sentenced by the jury.  The Court of Criminal Appeals' conclusion on this point was therefore not unreasonable.

---

[4] As indicated above, the testimony was that the co-defendant, rather than petitioner, was the person who fired the shots.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit. A final judgment shall be entered denying the petition.

**SIGNED** this the **26** day of **September, 2012.**

_____
Thad Heartfield
United States District Judge